FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 26, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MICHELLE T.,[1] <br><br>                 Plaintiff, <br><br>       v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br>                 Defendant. | No.   4:21-cv-5115-EFS <br><br> **ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS AND DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF** |

Plaintiff Michelle T. appeals the denial of benefits by the Administrative Law Judge (ALJ). Because the ALJ failed to provide clear and convincing reasons supported by substantial evidence for discounting Plaintiff's symptom reports, the Court grants summary judgment in favor of Plaintiff, denies the Commissioner's motion for summary judgment, reverses the decision of the ALJ, and remands this case for further proceedings.

///

//

/

---

[1] For privacy reasons, the Court refers to each social security plaintiff by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

1

## I.    Five-Step Disability Determination

2

A five-step sequential evaluation process is used to determine whether an

3    adult claimant is disabled.[2]  Step one assesses whether the claimant is engaged in

4    substantial gainful activity.[3]  If the claimant is engaged in substantial gainful

5    activity, benefits are denied.[4]  If not, the disability evaluation proceeds to step two.[5]

6

Step two assesses whether the claimant has a medically severe impairment

7    or combination of impairments that significantly limit the claimant's physical or

8    mental ability to do basic work activities.[6]  If the claimant does not, benefits are

9    denied.[7]  If the claimant does, the disability evaluation proceeds to step three.[8]

10

Step three compares the claimant's impairment or combination of

11    impairments to several recognized by the Commissioner as so severe as to preclude

12    substantial gainful activity.[9]  If an impairment or combination of impairments

13    meets or equals one of the listed impairments (a "listing"), the claimant is

14

15    _____

16    [2] 20 C.F.R. §§ 404.1520(a), 416.920(a).

17    [3] *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

18    [4] *Id.* §§ 404.1520(b), 416.920(b).

19    [5] *Id.* §§ 404.1520(b), 416.920(b).

20    [6] *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

21    [7] *Id.* §§ 404.1520(c), 416.920(c).

22    [8] *Id.* §§ 404.1520(c), 416.920(c).

23    [9] *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

conclusively presumed to be disabled.[10]  If not, the disability evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[11]  If the claimant can perform past work, benefits are denied.[12]  If not, the disability evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—considering the claimant's RFC, age, education, and work experience.[13]  If so, benefits are denied.  If not, benefits are granted.[14]

The claimant has the initial burden of establishing she is entitled to disability benefits under steps one through four.[15]  At step five, the burden shifts to the Commissioner to show the claimant is not entitled to benefits.[16]

---

[10] *Id.* §§ 404.1520(d), 416.920(d).

[11] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[12] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[13] *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497–98 (9th Cir. 1984).

[14] 20 C.F.R. §§ 404.1520(g), 416.920(g).

[15] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[16] *Id.*

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 3

1

## II.    Factual and Procedural Summary

In June 2019, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging an onset date of June 14, 2019.[17]  Plaintiff asserted disability based on her alleged disability because of fibromyalgia, rheumatoid arthritis, and depression.[18]  Plaintiff's claims were denied initially and upon reconsideration.[19]  Plaintiff then requested an administrative hearing.  In November 2020, ALJ Jesse K. Shumway conducted a telephonic hearing.[20]

## A.    The ALJ's Five-Step Findings on Remand

In denying Plaintiff's disability claim, the ALJ found as follows:

- Insured Status — December 31, 2024 would be Plaintiff's date last insured.[21]

- Step One — Plaintiff had not engaged in substantial gainful activity since June 14, 2019, the alleged onset date.[22]

---

[17] AR 206.

[18] AR 233.

[19] AR 93–120.

[20] AR 20, 37.

[21] AR 22.

[22] AR 22.

- Step Two — Plaintiff had the following medically determinable severe impairments: fibromyalgia, rheumatoid arthritis, obesity, carpal tunnel syndrome, and sleep apnea.[23]

- Step Three — Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.[24]

- RFC — Plaintiff had the RFC to perform a full range of light work, subject to the following additional limitations:
  - she cannot climb ladders, ropes, or scaffolds, and can only occasionally perform all other postural activities;
  - she can frequently finger bilaterally; and
  - she cannot have exposure to extreme cold or hazards, such as unprotected heights and moving mechanical parts.[25]

- Step Four — Plaintiff was capable of performing the past relevant work of an administrative assistant.[26]

- Step Five — Considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, including the following representative

---

[23] AR 22.

[24] AR 24.

[25] AR 24.

[26] AR 28.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 5

occupations: Marker, Assembler 2, and Cashier.  As an alternative finding, the ALJ also found that if Plaintiff were further limited to "occasional fingering and simple tasks consistent with a reasoning level of 3 or less," then she could still perform the work of the following representative occupations: Counter clerk, Ticket taker, Agricultural sorter, and Router.[27]

The ALJ issued a written decision finding Plaintiff had not been under a disability, as defined by the Social Security Act (the "Act"), from June 14, 2019, through the date of the ALJ's decision, November 24, 2020.[28]  Plaintiff appealed to the Appeals Council, which denied review.[29]  Plaintiff then appealed to this Court, primarily asserting that the ALJ erred by improperly discounting Plaintiff's symptom reports and certain medical opinions.[30]

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[31] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[32]  Substantial evidence is "more than a mere

---

[27] AR 29.

[28] AR 21, 30.

[29] AR 6.

[30] *See generally*, ECF Nos. 12 & 14.

[31] 42 U.S.C. § 405(g).

[32] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[33]  Because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[34]  The Court considers the entire record as a whole.[35]

Further, the Court may not reverse an ALJ decision due to a harmless error.[36]  An error is harmless "where it is inconsequential to the ultimate nondisability determination."[37]  The party appealing the ALJ's decision generally bears the burden of establishing harm.[38]

///

//

/

---

[33] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[34] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[35] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up).

[36] *Molina*, 674 F.3d at 1111.

[37] *Id.* at 1115 (cleaned up).

[38] *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 7

1

## IV.    Analysis

2       Plaintiff alleges the ALJ (1) failed to provide clear and convincing reasons

3 supported by substantial evidence for rejecting Plaintiff's symptom reports,

4 (2) improperly rejected the opinion of Plaintiff's treating rheumatologist, Sophia

5 Change, M.D., and (3) improperly rejected the opinion of consultative examiner,

6 Patrick Metoyer, M.D.

7 **A.    Symptom Reports: Plaintiff shows consequential error.**

8       In assessing Plaintiff's symptom reports, the ALJ found that although

9 Plaintiff's medically determinable impairments could reasonably be expected to

10 cause some of the alleged symptoms, her "statements concerning the intensity,

11 persistence and limiting effects of these symptoms are not entirely consistent with

12 the medical evidence and other evidence in the record . . . ."[39]  Because the record

13 does not contain affirmative evidence of malingering, the ALJ was required to

14 provide "specific, clear and convincing" reasons supported by substantial evidence

15 for rejecting Plaintiff's symptom reports after considering the relevant factors.[40]

16       Plaintiff asserts that the ALJ did not provide clear and convincing reasons

17 for rejecting her symptom reports.[41]  Plaintiff notes that she was able to retain her

18 _____

19 [39] AR 25.

20 [40] *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 16-3p, 2016 WL 1119029, at *7;

21 *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504

22 F.3d at 1036).

23 [41] ECF No. 12 at 4.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 8

1  former employment for as long as she did only because of the generous

2  accommodations provided and that, even then, she had struggled.[42]  She also

3  argues the ALJ improperly downplayed her fibromyalgia symptoms, including her

4  flares.[43]  The Court agrees.

5       1.  Plaintiff described having significant fibromyalgia-related limitations

6           and requiring related workplace accommodations.

7       Plaintiff testified at the administrative hearing that her workplace

8  limitations primarily stemmed from her fibromyalgia symptoms.[44]  She has been

9  struggling with fibromyalgia for over 20 years and described suffering from flu-like

10  muscle aches that never would go away, in addition to occasional flareups with

11  more severe symptoms.[45]  Her fibromyalgia flares—frequently triggered by stress,

12  overexertion, and/or environmental factors such as weather—would cause her to

13  need extra rest and sleep, sometimes for days at a time.[46]

14       For 20 years before applying for benefits, Plaintiff was gainfully employed as

15  an administrative assistant to a hospital executive.[47]  Plaintiff described several

16  ways in which her former employer had accommodated her fibromyalgia.  During

17  ─────────────────

18  [42] ECF No. 12 at 5–8.

19  [43] ECF No. 12 at 7–8.

20  [44] *See* AR 63.

21  [45] *See* AR 62–63, 73, 75–76.

22  [46] *See, e.g.*, AR 62–63, 241, 246.

23  [47] AR 65.

the last 15 of those 20 years, Plaintiff was "having a really hard time" with her

symptoms, and she received a reduced work schedule of only 32 hours per week.[48]

Even more, Plaintiff testified that her boss was "very flexible" and allowed her to

do "whatever [Plaintiff] needed" to address her fibromyalgia symptoms, including

coming in late, leaving early, and taking days off without prior notice—with such

accommodations generally occurring at least once per week.[49]  Thus, despite being

written up for 12 recorded absences in her last year alone, Plaintiff was able to

retain her position due to her boss's flexibility and the reduced work hours.[50]

In June 2019, Plaintiff became unemployed when her boss retired, resulting

in her position being eliminated.[51]  Plaintiff testified to searching for a job "that

was simple, not too active, [and] not stressful, after working as [an] administrative

assistant for that many years."[52]  But she could not find any jobs that she could

perform without receiving accommodations similar to those she previously

received; she explained, "I need to move around.  The hours just need to be flexible

---

[48] AR 68; *see also* AR 42 ("Those extra hours [off] kind of help me make it through
the day.").

[49] *See* AR 66–67; *see also* AR 280 (Jan. 2020 Function Report: "My boss was very
lenient with days I needed to stay home to rest or sleep.").

[50] *See* AR 41–42, 64, 67–68.

[51] AR 65, 409.

[52] AR 40–41.

for me in order to, you know, be able to bear it."[53]  Such accommodations were

necessary, Plaintiff said, because managing her fibromyalgia was "a day-by-day

thing," requiring her to keep several aspects of her life in balance, including being

active, but not too active, and offsetting potential triggers with extra rest.[54]

2.  <u>The ALJ failed to properly consider the nature and context of Plaintiff's
fibromyalgia and the related symptom reports.</u>

The ALJ found that Plaintiff's statements about "the intensity, persistence,

and limiting effects of her symptoms are inconsistent with the treatment record

documenting generally mild pain, and few complaints of . . . excessive need for rest

periods."[55]  Because the ALJ found that Plaintiff's fibromyalgia was reasonably

expected to cause at least some pain and fatigue, the ALJ was not permitted to

"discredit the claimant's testimony as to the severity of [those] symptoms merely

because they are unsupported by objective medical evidence."[56]  In contrast, an

ALJ may discount symptom reports to the extent they are inconsistent with prior

---

[53] AR 41–42.

[54] *See* AR 67–69, 454 (Sept. 2020 medical report: "Prognosis: managed—not cured.
Lifetime of balance between self-care & medication."). AR 458, 540 (June & Sept.
2020 treatment notes, respectively, advising Plaintiff to pace daily activity and
take daily breaks).

[55] AR 25.

[56] *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

statements or other parts of the record.[57]  Even then, however, to assess whether there is truly an inconsistency between symptom reports and other materials in the record, the ALJ is required to fully account "for the context of materials [and] all parts of the testimony and reports" as well as "for the nature of [the impairment] and its symptoms."[58]

To support his finding, the ALJ noted that Plaintiff's fibromyalgia was already present during much of the time that she was working as an administrative assistant to a hospital executive.[59]  Yet, aside from noting that Plaintiff "had been working about 32 hours a week," the ALJ seemingly ignored the fact that Plaintiff received the extraordinary work accommodations described above.  The ALJ also overlooked the fact that—even with the accommodations— Plaintiff experienced significant fibromyalgia symptoms and flares while working.[60]

Plaintiff reported that her fibromyalgia had, as a general matter, been worsening over time.[61]  But the elimination of her job in June 2019 also greatly

_____

[57] *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (An ALJ may consider "ordinary techniques of credibility evaluation," including "prior inconsistent statements concerning the symptoms.").

[58] *See Reddick*, 157 F.3d at 723.

[59] AR 25.

[60] *See* AR 323–25, 408–13.

[61] *See* AR 40–41, 63–65, 248, 280

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 12

reduced the amount of physical and mental stressors that she consistently reported tended to aggravate her fibromyalgia symptoms and cause flares.[62]  The record shows that the net effect of this was that, even after Plaintiff no longer had any job duties, she continued to have significant fibromyalgia symptoms and flares despite the associated reduction in triggers.[63]  Consistent with the overall medical evidence, Plaintiff testified that her fibromyalgia symptoms would become worse if she were to return to anything approximating fulltime work.[64]  The ALJ's decision failed to account for this.[65]

---

[62] *See* AR 409–10 (June 2019 treatment note: during her last week of employment, Plaintiff complaining of muscle pain and fatigue; "When she does physical activity or exercise, she hurts more the next day and that makes her feel very tired and resting helps."); AR 327 (Aug. 2019 treatment note: Plaintiff reporting that after her employment was terminated, she "has felt pretty good since she can sleep better," and she "can exercise whenever she wants," but she still experienced the "occasional flare on Fibromyalgia with low energy" and a pain level of "about 5/10 mostly").

[63] *See* AR 321–28, 408–13, 427–31, 442–43, 457–58, 540–41.

[64] *See* AR 42, 66–69.

[65] *See Reddick*, 157 F.3d at 723.

3.  <u>Plaintiff's fibromyalgia symptom reports are consistent with the other evidence of record.</u>

In assessing Plaintiff's fibromyalgia symptom reports, the ALJ's analysis turned largely on his interpretation of the treatment notes in which Plaintiff reported pain on a 10-point scale.[66]  The ALJ found that Plaintiff's reported pain levels "were typically at 3 out of 10 on a 10 point scale."[67]  And the ALJ's findings make clear he was of the opinion that a chronic pain level of 3 out of 10 is insufficient to warrant needing the kind of rest and other limitations to which Plaintiff testified.[68]  But the Ninth Circuit has warned against relying too heavily on pain-scale reports when assessing a claimant's symptom reports, noting that a claimant's ranking "is of only marginal assistance to a decisionmaker whose own subjective one-to-ten scale may differ significantly."[69]

---

[66] *See* AR 25–26.

[67] *See* AR 26.

[68] *See* AR 62–63 (Plaintiff describing sometimes needing to rest for "the rest of the day" after engaging in increased activity and sometimes needing more sleep as "a break for the pain."); AR 67–68 (Plaintiff describing taking naps, leaving early, and taking days off when she was still employed.).

[69] *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 14

Additionally, though the ALJ is correct that Plaintiff repeatedly reported a pain level of 3 out of 10 associated with her fibromyalgia,[70] this was generally Plaintiff's *base* pain level when she was flare-free and/or noting an improvement in her fibromyalgia symptoms.  For each relevant year, the record contains several treatment notes in which Plaintiff reported experiencing fibromyalgia flares accompanied by increases in pain.[71]  Despite these numerous reports, the ALJ

---

[70] *See* AR 322 (July 2018: pain level 3/10 when fibromyalgia is stable with no flare); AR 323 (Sept. 2018: pain 3/10); AR 326 (March 2019: pain 1/10; "Sounds like she might have some improvement with Methotrexate but susceptible to infection."); AR 326 (May 2019: pain 1–2/10; "Reports that she feels better since on Methotrexate injection.); AR 442 (Nov. 2019: pain 3/10); AR 443 (Jan. 2020: same); AR 457 (Sept. 2020: same).

[71] *See, e.g.*, AR 324 (Nov. 2018: pain 5/10; having flare); AR 325 (Jan. 2019: pain 10/10 when walking the past week; pain 5/10 otherwise); AR 413 (July 2019: "She gets multiple flareups of her fibromyalgia."); AR 327–28 (Aug. 2019: pain 5/10; having "mild" flare; "occasional flare on Fibromyalgia with low energy"); AR 427 (Sept. 2019: pain 6/10; "notes monthly flare with pain up to [7–8]"); AR 442 (Nov. 2019: "occasional flare on Fibromyalgia with low energy"); AR 443 (Jan. 2020: same); AR 458 (June 2020: noting mild flare earlier; "Advise[d] again in pacing daily activity and taking break[s] due to Fibromyalgia."); AR 540 (June 2020: "She has chronic on and off muscle pain due to fibromyalgia."  "She has rheumatoid

erroneously found that "[t]he treatment records do no[t] document consistent complaints of flares."[72]

There are at least four problems with this finding and the ALJ's reliance on a perceived lack of "consistent complaints." First, even if the finding were accurate, a lack of documented complaints cannot, by itself, serve as a basis for discrediting Plaintiff's symptom reports.[73] Second, the ALJ provides no explanation for how or why Plaintiff's repeated reports of suffering from flares did not suffice as "consistent complaints." Third, the ALJ failed to provide any analysis as to the average number of flares Plaintiff was likely to experience during a given time period or how they might affect Plaintiff's absence rate and/or need for additional breaks.

Fourth, and finally, the fact that Plaintiff consistently reported fibromyalgia flares is not diminished by them sometimes being described in treatment notes as "mild" or "occasional"; nor is it undercut by Plaintiff having a few isolated months

---

arthritis and she hurts a lot."); AR 457 (Sept. 2020: "Mild flare of Fibromyalgia sometimes." "Advise[d] again" regarding pacing and daily breaks.).

[72] AR 26 (saying, "She reported none in May 2019, only a mild flare in August 2019, only 'occasional' flares as of November 2019, and only mild flares 'sometimes' in September 2020.").

[73] *Reddick*, 157 F.3d at 722.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 16

1   with fewer flares.[74]  Fibromyalgia symptoms tend to wax and wane.[75]  Further,

2   many of Plaintiff's flares—and the resulting increases in reported pain to about 5

3   out of 10—are documented in the very same records in which Plaintiff's doctors

4   described her flares as "mild" and/or "occasional" and her fibromyalgia as

5   "manageable."[76]  In other words, the record shows that even when Plaintiff's

6   fibromyalgia was controlled to the point of being considered "manageable" or

7   "mild," her symptoms were still significant.

8          Moreover, in her testimony, Plaintiff provided a reasonable explanation for

9   why the record does not contain an even greater number of complaints of

10   fibromyalgia symptoms and flares.  Plaintiff simply had no cause to repeatedly

11   assert the same complaints to doctors who were already aware of her situation.[77]

12

13

---

14   [74] *Cf.* AR 26 (ALJ finding, "She reported none in May 2019, only a mild flare in

15   August 2019, only 'occasional' flares as of November 2019, and only mild flares

16   'sometimes' in September 2020.").

17   [75] *See Revels v. Berryhill*, 874 F.3d 648, 657 (9th Cir. 2017) (noting, "SSR 12-2P

18   recognizes that the symptoms of fibromyalgia 'wax and wane'").

19   [76] *See, e.g.*, AR 324–28, 413, 427, 442–43, 457–58, 540.

20   [77] AR 63–65 (explaining that it was impractical for her to report every fibromyalgia

21   problem she experienced between appointments); AR 64 (explaining that there was

22   no need to report individual flares and related work absences, because she and her

23   boss "were the best team, so [they] just worked around that.").

1    And, both while employed and thereafter, Plaintiff's flexible schedule has allowed
2    her to take breaks, stay home, and/or rest as needed.

3         Contrary to the ALJ's findings, Plaintiff's fibromyalgia-related symptom
4    testimony is consistent with the treatment records and her reports therein.  The
5    record lacks substantial evidence to support the ALJ's findings regarding Plaintiff's
6    "generally mild" pain levels being inconsistent with her claimed limitations.[78]
7    Further, the ALJ erred by implying that the record needed to contain some
8    unspecified critical mass of flare-related complaints to substantiate Plaintiff's
9    symptom reports.

10        4.  <u>The ALJ's error was consequential.</u>

11        The ALJ failed to provide clear and convincing reasons for discounting
12   Plaintiff's fibromyalgia-related symptom reports.  In assessing Plaintiff's symptom
13   reports and in crafting an RFC, the ALJ omitted, without adequate explanation,
14   considerations of Plaintiff's fibromyalgia flares, their likely triggers, and to what
15   extent, if any, Plaintiff required workplace accommodations similar to those
16   previously received.[79]  The vocational expert's testimony indicates that if the RFC
17   had included Plaintiff's claimed limitations, she would have necessarily been found

18

19   _____

20   [78] *See* AR 25.

21   [79] *See* AR 20–30 (providing no analysis regarding the potential impact of Plaintiff's
22   fibromyalgia on her likely rate of absenteeism, need for schedule flexibility, or need
23   for extra breaks).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 18

disabled.[80]  On that basis, the Court reverses the ALJ's decision and remands for additional proceedings.

The ALJ's analysis of Plaintiff's testimony and other symptom reports is inherently connected to how the ALJ viewed and weighed the various medical opinions presented in this case.  As such, the Court need not address Plaintiff's other claims of error.

## V.    CONCLUSION

The ALJ's errors require remand for further proceedings because questions remain as to whether Plaintiff is disabled for purposes of the Social Security Act.[81] The Court finds such proceedings would benefit from the fresh perspective of a different ALJ.  On remand, the newly assigned ALJ shall provide Plaintiff an opportunity to further develop the record; the ALJ shall then conduct a renewed analysis, starting at step four of the five-step sequential evaluation process and specifically reevaluating Plaintiff's symptom reports, the medical records and opinions, and Plaintiff's RFC.

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is
        **GRANTED**.

---

[80] *See* AR 83 (opining that being off task more than 15% of the workday and/or being absent more than 6 days per year would bar competitive employment).

[81] *See Leon v. Berryhill*, 800 F.3d 1041, 1045 (9th Cir. 2017); *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

2.      The Commissioner's Motion for Summary Judgment, **ECF No. 13**, is

**DENIED**.

3.      The decision of the ALJ is **REVERSED**, and this matter is

**REMANDED** to the Commissioner of Social Security for further

proceedings pursuant to sentence four of 42 U.S.C. § 405(g), which are

to be conducted by a different ALJ.

4.      The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff.

5.      The case shall be **CLOSED**.

IT IS SO ORDERED.  The Clerk's Office is directed to file this order and

provide copies to all counsel.

**DATED** this 26th  day of August 2022.

s/Edward F. Shea
EDWARD F. SHEA
Senior United States District Judge

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 20